965 So.2d 825 (2007)
Todd A. JAFFY, Appellant,
v.
Tracy L. JAFFY, Appellee.
Nos. 4D05-3656, 4D06-2459.
District Court of Appeal of Florida, Fourth District.
June 27, 2007.
Order Denying Rehearing October 24, 2007.
*827 Denise C. Desmond of Denise C. Desmond, P.A., Lake Worth, and Jonathan S. Root of Graner Root & Heimovics, P.A., Boca Raton, for appellant.
David K. Friedman and Annette J. Szorosy of Weiss, Handler, Angelos & Cornwell, P.A., Boca Raton, for appellee.
FARMER, J.
For a marriage not longer than ten years, the trial judge awarded permanent periodic alimony to a 34-year old spouse with a college degree and no health or employment problems. We conclude that the award is an abuse of discretion. We also conclude that the record does not support the trial court's finding as to husband's current income. On remand the court shall make alimony rehabilitative and recalculate any periodic amount based on his current income rather than presuming an amount that might have been represented in a mortgage loan application given before the marriage fell apart.
Husband and wife had been married for just under ten years when they became estranged. They have three children, now 8, 6, and 3. He filed for dissolution of marriage. The final judgment gives her the marital home, permanent alimony, child support, and an equalization transfer of just under $93,000. Later the trial court entered an order fixing installment payments on this equalization transfer. The marital assets were thus divided equally.
As to alimony, she was 34 when this case was filed. She has a bachelor's degree in communications from Hartford University. Before their children were born, she had been employed as an editor's assistant, a telemarketer, an intern in film production, and a full time teacher's assistant. She has no health or other problems inhibiting her ability to make a career for herself. Although she stayed home to care for the children, the evidence failed to show that she is incapable of becoming self-supporting. Her expert on career counseling testified, however, that she has a "very low interest and drive to work" at any occupation. Based on this testimony, the court found that "the wife's lack of interest [in any occupation] is so deranged that she is doomed to failure." As a result the court imputed earning ability to her at the lowest level of compensation possible.
The trial court found that the husband maintained the high standard of living of the parties. The evidence does not support this finding. In fact the evidence shows beyond quibble that to make their standard of living, the parties often required assistance from both parents. The wife's father gave them $100,000 for the down payment on the marital home. She testified that they could not have lived on her husband's income alone and that her parents provided much of their lifestyle. The accountants on both sides testified that the parties could not continue their marital lifestyle on his current income.
Hence the factor involving the standard of living during the marriage is of little practical value in deciding the alimony question. Nichols v. Nichols, 907 So.2d 620, 623 (Fla. 4th DCA 2005) (when the parties have lived beyond their means, standard of living during marriage not a useful guide in awarding alimony). Moreover when a high standard of living has been made possible only by contributions from parents, awarding permanent alimony fixed at that standard could have a pernicious effect. Doing so rewards extravagance and encourages lifetime profligacy while discouraging correction, legitimizes waste, and perverts the basic purpose of alimonyproviding assistance for those who are unable to *828 support themselves. Fixing alimony at a profligate standard of living is to turn alimony into a lottery. That is one reason why the standard of living during marriage is not a super factor trumping all other factors in awarding alimony. Lambert v. Lambert, 955 So.2d 35 (Fla. 3d DCA 2007); Donoff v. Donoff, 940 So.2d 1221, 1225 (Fla. 4th DCA 2006) (purpose of factor about standard of living during marriage has only limited meaning and application).
The court also erred in finding that no plan of rehabilitation is possible because of her "deranged" lack of interest in workingthat any attempt to require her to work would be "doomed to failure." That cannot possibly be a valid justification for refusing to limit alimony to rehabilitation for a spouse who has a college education and is young enough and able to become self-supporting. If it were valid, there would be no reason for any able spouse to try to become self-supporting. See Evans v. Evans, 443 So.2d 233, 235 (Fla. 1st DCA 1983) ("To award her permanent periodic alimony . . . for the rest of her life would appear to impair any desire she might have to strive forward financially."). Adopting such a rationale would turn the need factor in alimony into a desire or want test. This rationale directly conflicts with the essential purpose of alimony to those who need such support. The trial court's reason for finding the wife in need of permanent support is therefore legally unsustainable.
We also find the facts and circumstances in this case very similar to those in several reported decisions where permanent alimony was deemed improper. In McLauchlin v. McLauchlin, 580 So.2d 812 (Fla. 2d DCA 1991), for example, the party seeking permanent alimony was in her mid-30s and, like the spouse here, had primary residential custody of three children. In affirming a denial of permanent alimony the court explained:
"Although this marriage was not a brief marriage, the wife is still young and able to find suitable employment. The relatively equal distribution of the couple's limited assets does not create a circumstance requiring permanent alimony." [c.o.]
580 So.2d at 813-14. Similarly, in Childers v. Childers, 640 So.2d 108, 110 (Fla. 4th DCA 1994), we held an award of permanent alimony is inappropriate where the spouse is young, educated, and comparatively healthy.
The duration of marriage being less than 10-years makes this a short term marriage. See Iribar v. Iribar, 510 So.2d 1023, 1024 (Fla. 3d DCA 1987) (10 year marriage is short term). In short term marriages where the partners are still young and able, the presumption is for rehabilitative alimony rather than permanent. Reeves v. Reeves, 821 So.2d 333, 334 (Fla. 5th DCA 2002) (holding that in case of a short term marriage, a presumption against awarding permanent alimony arises, but such presumption is rebuttable); Green v. Green, 672 So.2d 49, 51 (Fla. 4th DCA 1996) ("This was a short-term marriage, and generally permanent alimony is inappropriate unless a genuine inequity is created by the dissolution."); Geddes v. Geddes, 530 So.2d 1011 (Fla. 4th DCA 1988) (no error in awarding only rehabilitative alimony after 9 year marriage to 45-year old spouse who was self sufficient before marriage and there was no reason why she could not become so again); Contogeorgos v. Contogeorgos, 482 So.2d 590 (Fla. 4th DCA 1986) (holding that for 9-year marriage where wife was 29-years old and able to be self-sufficient rehabilitative alimony should have been awarded; reversing permanent periodic alimony as inappropriate); Campbell v. *829 Campbell, 432 So.2d 666 (Fla. 5th DCA 1983), petition for review dismissed, 453 So.2d 1364 (Fla. 1984) (after a 10-year marriage a 34-year-old wife should have received only rehabilitative alimony, not permanent). As such the trial court's discretion to make alimony permanent would require factors not present in this case i.e., the spouse is unemployable or only at severely reduced income.
Finally, the fact that his income substantially exceeds hers does not justify permanent periodic alimony. Rojas v. Rojas, 656 So.2d 563 (Fla. 3d DCA 1995) (evidence that his income was more than wife's during her previous employment did not support award of permanent periodic alimony where wife was 35 years old, in good health, and had some job skills that could eventually enable her to become self-supporting); Hann v. Hann, 629 So.2d 918 (Fla. 2d DCA 1994) (fact that his income was more than wife's does not justify award of permanent alimony to her where she was 40, had no health disabilities, and had education and experience to become self-supporting); Fulks v. Fulks, 558 So.2d 205 (Fla. 2d DCA 1990) (no justification for permanent periodic alimony where he had more income than wife who was 40, in good health, and had 14 years work experience); see also Wismar v. Wismar, 522 So.2d 552 (Fla. 5th DCA 1988) (award of permanent alimony in this case, without any basis or justification in the record, except as a means to provide the wife with a higher standard of living at the husband's expense, constitutes an abuse of discretion).
As to his income, the trial court found that before divorce proceedings were initiated he had represented his income in an application to a mortgage lender as $16,500 per month. The court thereupon used that figure as his available income for purposes of alimony and child support, treating the admission functionally as an estoppel. Yet accountants on both sides testifiedafter review of recent W-2s, K-1s, and the books and records of his businessesthat neither expert could substantiate that he had ever earned a gross monthly income of $16,500and that applied to the present as well. She testified that she saw him periodically with cash, but she gave no specifics as to the source, any regular amount, or frequency of such cash. The trial court's finding as to his income is not supported by the evidence.
The essential criterion for fixing an amount of alimony isafter a payee's needa present ability of the payor to sustain it. See § 61.08(2) Fla. Stat. (2005); Zold v. Zold, 911 So.2d 1222 (Fla. 2005) (trial courts should consider only that portion of income available to spouse in calculating alimony); Olds v. Olds, 555 So.2d 883 (Fla. 2d DCA 1989) (trial court should have considered husband's ability at present time, not what might occur in the future); Kernan v. Kernan, 495 So.2d 275 (Fla. 5th DCA 1986) (same).
There is an important reason for this. The failure to pay alimony may be coerced through the contempt powers of the court. A final judgment to pay alimony carries with it a presumption that the payor is currently able to do so. Martyak v. Martyak, 873 So.2d 405 (Fla. 4th DCA 2004) (holding that final judgment ordering $4,000 in monthly alimony created presumption in subsequent proceedings that husband had ability to pay that amount). Such coercion is absolutely dependent on the payor's current ability to comply with the order of the court. Garo v. Garo, 347 So.2d 418 (Fla. 1977) (contempt finding for nonpayment of alimony depended on specific finding of present ability to pay).
*830 But if the court's command is itself premised only on an ability that might have once existed in the past but has not been shown to exist currently, there is the danger that the coercive powers of the court will be exercised on one who simply lacked the ability to comply with the order when entered. See, e.g., Pompey v. Cochran, 685 So.2d 1007 (Fla. 4th DCA 1997) (holding that father being held in jail based on presumption of ability to comply could not have been incarcerated for civil contempt of child support order, after failing to appear at contempt hearing, without affirmative finding based on evidence that he had present ability to pay purge amount). Hence, it is imperative that findings as to the ability to pay alimony are supported by evidence showing the payor's present ability to comply.
Reversed and remanded with instructions.
GUNTHER, J., concurs.
STONE, J., concurs in part, and dissents in part with opinion.
STONE, J., concurring in part and dissenting in part.
I concur in the majority opinion except as to the trial court's findings regarding the husband's income. As to this, I cannot say there was an abuse of discretion.

ON MOTION FOR REHEARING
PER CURIAM.
Appellee/cross-appellant's motion for rehearing is denied.
GUNTHER and FARMER, JJ., concur.
STONE, J., dissents with opinion.
STONE, J., dissenting.
I initially concurred in part with the majority opinion because I accepted the premise that a marriage just short of ten years is a "short term" marriage. On reconsideration, I would now recognize that this marriage is a "gray area" marriage, as found by the trial court, and that, therefore, the trial court correctly recognized that there is no presumption regarding permanent alimony. See Yitzhari v. Yitzhari, 906 So.2d 1250, 1256 (Fla. 3d DCA 2005) ("A nine-year marriage has been held to fall into the `gray area' in which `[t]here is no presumption for or against permanent alimony.'" (emphasis supplied; citations omitted)); Adinolfe v. Adinolfe, 718 So.2d 369, 370 (Fla. 4th DCA 1998) (nine year marriage "may very well be in the `gray area'"). In a gray area marriage, "a disparate earning capacity becomes a `significant factor' in deciding whether permanent . . . support is appropriate." Nelson v. Nelson, 721 So.2d 388, 389 (Fla. 4th DCA 1998); see also Byers v. Byers, 910 So.2d 336, 343-44 (Fla. 4th DCA 2005).
Here, the husband's expert accountant testified that the husband had a gross monthly income of $12,687, or over $150,000 per year. (T 349, 372) Thus, even if the wife worked as a gemologist, with an income comparable to retail sales, as the trial court found the wife capable of doing, it is not likely that she will ever attain a level of self-support reasonably commensurate with a standard of living of $150,000 per year.
Although I agree that the wife's health and youth are factors to consider in weighing permanent alimony, the court also properly considered whether the wife can establish a standard of living reasonably commensurate with the standard set throughout the marriage. See Ghen v. Ghen, 575 So.2d 1342 (Fla. 4th DCA 1991).
I recognize that these parties' standard of living may have been, to some extent, "artificially enhanced" by their parents' contributions. Nevertheless, the trial *831 court could consider the wife's role as a mother and that she will likely never earn a salary which would allow her to live in accordance with the lifestyle the husband's salary afforded them. See Byers, 910 So.2d at 343 (a party is not self-supporting, for purposes of determining whether to award permanent periodic alimony because she has the opportunity to enter the job market, without some evidence of the ability to earn a salary which would allow the party to live in accordance with the lifestyle established during the marriage). Further, where the superior earning power of one spouse is achieved during a period when the other spouse is out of the job market as a result of an agreement that the non-working spouse will care for the children, courts of this state have not hesitated to reverse awards of temporary support in lieu of permanent alimony. Id.
I would hold that this record does reflect disparate earning power of the parties such that a trial court could find it a significant factor in determining whether permanent support is appropriate. See Nelson; Byers, supra; see also Zeigler v. Zeigler, 635 So.2d 50 (Fla. 1st DCA 1994) (trial court abused its discretion in deciding to amend temporary support in lieu of permanent alimony where there was no evidence in the record that the wife would be able to support herself in a manner reasonably equal to marital standard of living and no evidence of the husband's inability to provide some level of permanent support: wife was 35, parties had 3 minor children, and thirteen-year marriage fell into the "gray area"). I note that in Harvey v. Harvey, 596 So.2d 1251 (Fla. 4th DCA 1992), this court also upheld an award of permanent alimony in a ten-year marriage.
As indicated by my initial dissent, I would also recognize that there is record evidence supporting the trial court's conclusion as to the husband's income. Just two months prior to seeking this dissolution, the husband swore, under oath, to a mortgage application reflecting a higher income than he now claims from his share in three separate businesses (with respect to one of which the books were in "chaos"), and there was testimony that he brought home "cash" in addition to his stated income.
I would further recognize, on reconsideration of the record, that the trial court explicitly did not, and did not have to, accept a conclusion that the wife's parents provided much of the parties' lifestyle. Although the parents' gifts (which included furniture and $100,000 used as a down payment on the parties' home) obviously made it easier for the parties to purchase and furnish their home, the trial court could, and did, find that the parties would have been able to afford a comparable lifestyle without the parents' gifts.
I cannot say, on the facts of this case, that a trial court could not view the totality of this record as supporting permanent alimony in doing equity and justice between the parties.