*350 PER CURIAM.
In this appeal, the Former Husband, Joseph I. Perkovich, challenges a number of the trial court’s determinations in the Final Judgment of Dissolution of Marriage. The Former Wife, Wendy S. Humphrey-Perkovich, cross-appeals raising two issues relating to her income and the valuation of her business. We affirm in part, reverse in part, and remand for further proceedings.
Permanent Periodic Alimony
The parties were married in 1980. During the marriage both the Former Husband and the Former Wife completed postgraduate studies that resulted in professional occupations. The Former Wife is a physician specializing in obstetrics and gynecology. She and a partner practice their specialty as the Southwest Florida Women’s Group. The Former Husband is an accountant and licensed attorney with advanced law degrees in tax and estate planning. At the time of the final hearing, he was employed as a chief executive officer of a major corporation.
In awarding the Former Wife permanent periodic alimony of $1000 per month, the trial court gave “large consideration” to the “current disparate incomes as well as the possible impact on the Wife’s future earnings due to her medical condition.” The trial court found that the Former Wife has a condition known as “benign essential tremor.”[1] Based on the evidence presented, the trial court stated in the final judgment that it could not “say with any degree of certainty that this condition will, or will not, affect the Wife’s future ability to continue in her occupation as a surgeon.” There was no evidence that this condition presently caused the Former Wife any disability, nor was there evidence suggesting a present likelihood of a future disability. One witness evaluated the slight tremor in her fingertips as “1” on a scale of “10.” The Former Wife did testify, however, that she had been advised that the condition was progressive and thus could be expected to worsen. It is a matter of concern to the Former Wife because approximately 20% of her income is derived from performing surgery.
The purpose of permanent alimony is to provide for the needs and necessities of life to a former spouse commensurate with the marital standard of living. The primary focus is on one party’s need and the other’s ability to pay support to supply those needs. “To determine need, the court should consider the standard of living the Former Wife enjoyed during the marriage and her age, health, and earning ability.” Matajek v. Skowronska, 927 So.2d 981, 987 (Fla. 5th DCA 2006). Section 61.08(1), Florida Statutes (2005), contains the other factors a trial court must consider in deciding whether to award alimony and in what amount.
Here, the trial court found that the Former Wife’s annual income was $320,000 per year, an amount that provided for her needs. Yet, the trial court’s justification for the award was the disparate incomes of the parties. The trial court found the *351 Former Husband’s annual income was $450,000. By any measure, the Former Husband’s annual income substantially exceeds the Former Wife’s. However, the measure of income in this instance is an improper basis upon which to award permanent alimony.
This court has held that disparate incomes, standing alone, do not justify an award of permanent alimony. In Hann v. Hann, 629 So.2d 918 (Fla. 2d DCA 1993), the wife was forty years of age, in reasonably good health, and had education and experience to allow her to become self-supporting. In light of these factors, we stated, “The fact that the husband’s income was more than the income of the wife does not justify the award of permanent alimony.” Id. at 920; see also Jaffy v. Jaffy, 965 So.2d 825, 829 (Fla. 4th DCA 2007) (holding that “the fact that his income substantially exceeds hers does not justify permanent periodic alimony.”); Rojas v. Rojas, 656 So.2d 563, 565 (Fla. 3d DCA 1995) (holding that trial court abused its discretion in awarding the wife permanent periodic alimony where she was thirty-five years old, in good health, and had skills that could enable her to become self-supporting; the fact that the husband’s income was greater than hers during her previous employment did not “solely justify the award of permanent periodic alimony to the wife”). In this case, we likewise conclude that the trial court abused its discretion by awarding the Former Wife permanent periodic alimony. She is both highly educated and earns a substantial income. The fact that the Former Husband receives a greater annual income does not support the award of permanent alimony. Thus, we reverse the $1000 monthly alimony award.
This is not to say, however, that some amount of permanent periodic alimony is unwarranted. We note the significance the trial court attributed to its finding about the Former Wife’s medical condition.[2] Thus, the issue becomes whether the trial court should reserve jurisdiction by awarding a nominal amount of permanent periodic alimony. “The question of whether to reserve jurisdiction to award alimony in the future lies within the court’s discretion.” Roy v. Roy, 522 So.2d 75, 76 (Fla. 4th DCA 1988). Generally, the rule “is that where there is a likelihood of a change in circumstances in the future that would warrant an award of alimony, the court should retain jurisdiction.” Id. See also Cunningham v. Cunningham, 930 So.2d 719, 720 (Fla. 2d DCA 2006) (holding that in the parties’ circumstances, the trial court abused its discretion in failing to award a nominal amount”). We leave to the trial court’s discretion on remand the question of whether to award a nominal amount of permanent periodic alimony so as to reserve jurisdiction in case of a disadvantageous change in the Former Wife’s earning abilities in the future. See Fleck v. Fleck, 958 So.2d 1043 (Fla. 2d DCA 2007).[3]
Child Support
The Former Husband contends and the Former Wife agrees that the trial court erred in failing to subtract the alimony award in computing the amount of child *352 support the Former Husband must pay. On remand, the award of child support may have to be revisited depending on the trial court’s decision on alimony as a result of our determination above.
The Carrington Condominium
The Former Husband next contends that the trial court erred in the disposition of the marital asset identified as the Carrington Condominium. He argues that pursuant to an agreement between the parties, the condominium was to be awarded to him as his sole property and, in return, the Former Wife was to receive an amount equal to one-half of the condominium’s equity value as a cash payment. The Former Wife claims there was no error in the trial court’s order that the Former Husband convey a one-half interest in the property to her as a tenant-in-common.
After carefully reviewing the evidence before the trial court, including transcripts of the proceedings, we conclude that the Former Husband’s contention is correct. Accordingly, we reverse the disposition of this asset in the final judgment and direct that it be awarded on remand to the Former Husband as his sole property. Further, we understand that the Former Husband has placed into escrow funds and an original deed to this property pending resolution of this claim on appeal. Accordingly, we direct that on remand these sums be disbursed to the Former Wife and the escrowed deed released to the Former Husband. Any other amounts or credits awarded to the Former Wife related to this claim are to be adjusted accordingly.
Future Marital Liability For Medical Malpractice
Because the Former Wife is actively practicing her particular specialty, the trial court stated that the “very nature of the Wife’s profession creates exposure to lawsuits.” Thus, the trial court found that a real possibility exists that she may face lawsuits in the future based on her treatment of patients before the parties separated. Concluding that such future claims are “marital in nature,” the trial court ordered that “all expenses related to any of these liabilities that are not covered by insurance are to be divided equally between the parties.” The Former Husband contends that he cannot be held liable for these potential future claims. We agree.
Section 61.075(5)(a), Florida Statutes (2005), defines the term “marital liabilities” as those “liabilities incurred during the marriage, individually by either spouse or jointly by them.” The definition provides that the Former Wife’s liability for malpractice would qualify for equitable distribution pursuant to the statute if it were “incurred during the marriage.” In this instance, the record establishes that no liability has been incurred; only the possibility of a liability is present. The trial court’s conclusion is speculative, at best. We conclude it was error to assign responsibility for potential future claims of this type to the Former Husband. On remand, the trial court shall remove this provision from the amended final judgment.
The Stark Realty Properties
One of the marital assets was a share in what the parties referred to as the Stark Realty properties. During the pendency of the dissolution proceedings, these properties were put up for sale. On May 5, 2005, the parties entered into a stipulation, approved by the trial court, authorizing the Former Husband to proceed with the sale. On May 18, 2005, the trial court issued its written findings of fact. Before the trial court entered the final judgment, however, the sale was finalized. The Former Husband sought to have the equitable distribution evaluations modified to reflect the realities of the sale. *353 The trial court declined to do so. This was error.
It is appropriate to deduct the estimated costs incurred in the sale of real property, Taber v. Taber, 626 So.2d 1089, 1090 (Fla. 1st DCA 1993). Here, the trial court was afforded the opportunity to use real, not estimated, numbers in computing the valuations necessary for equitable distribution. We reverse and remand with instructions to recompute the appropriate valuations using the actual numbers that resulted from the sale. Should either party dispute the accuracy or veracity of the actual costs, the trial court is authorized to take evidence to resolve the dispute.
Valuation of the Medical Practice
The Former Wife contends that the trial court erred in assigning the full value of her medical practice to her, instead of only half its value, as she shares the practice with a partner. We agree that the court erred in so doing. On remand, the equitable distribution valuation shall be amended accordingly.
Remaining Claims
We decline to address the parties’ remaining claims of attorney’s fees and the determination of the Former Wife’s income.
Conclusion
Affirmed in part; reversed in part; remanded with instructions.
WHATLEY and CASANUEVA, JJ., Concur.
ALTENBERND, J., Concurs with opinion.

. The Internet health site WebMD describes this disease:
Benign essential tremor is a neurologic movement disorder characterized by involuntary fine rhythmic tremor of a body part or parts, primarily the hands and arms .... [and is] generally considered a slowly progressive disorder. Disease progression is characterized by an increase in tremor amplitude, causing difficulties in performing fine motor skills and varying degrees of functional disability. For example, hand tremor may gradually cause difficulties with manipulating small objects, drinking fluids from a glass, eating, writing, or dressing.
http://www.webmd.com/brain/benign-essenlial-tremor (last visited October 7, 2008).

. The Former Wife's medical condition distinguishes this case from Italiano v. Italiano, 873 So.2d 558 (Fla. 2d DCA 2004), disapproved on other grounds in Montello v. Montello, 961 So.2d 257 (Fla.2007).

. The Former Husband also contends the trial court erred in awarding retroactive alimony. If the trial court decides to award a nominal amount of alimony on remand, the award of retroactive alimony will need to be readdressed.