POLEN, J.
Appellant, Albert Joseph Vitro (“Former Husband”), appeals the trial court’s final judgment of dissolution of marriage, arguing specifically that the trial court erred in determining amounts and property owed to Mary Vitro (“Former Wife”). For the following reasons we agree in part with Former Husband that the trial court erred in regards to the amount of alimony and the equitable distribution of the former spouses’ property. As such, we reverse and remand to the trial court for reconsideration and clarification of its findings in the final judgment.
Former Husband and Former Wife were married on July 25, 1987. Former Wife filed for dissolution of marriage almost twenty-two years later, in February of 2009. During the marriage, the family lived in a 3000 square foot home on a lake and golf course in Coral Springs, Florida. The home was furnished with approximately $90,000 worth of furniture. The couple’s two children dressed in designer clothing and attended a private school that cost approximately $20,000 per year. The family took trips out of state and out of the country. The parties exchanged expensive gifts, drove expensive cars, held season *384 tickets to sporting events, and purchased their children a luxury vehicle. Under an agreed order, Former Wife vacated the home the couple shared. The court ordered that the parties were to have fifty/fifty timesharing of their minor child.
Former Husband was employed as a tax accountant until he suffered from post-traumatic stress disorder, depression, anxiety, and sleep disorder and was deemed disabled. As a result, Former Husband received private and social security disability compensation. The private disability was $6742 per month, while the social security disability was $1898 per month. An additional $997 was paid by the social security administration on a monthly basis for child support, and that amount was deducted from Former Husband’s obligation. Former Wife was working as an administrative assistant in the real estate market from 2005 to 2009, making $30,000 per year, with promotions and pay raises, increasing her salary to approximately $60,000. Former Wife maintained that job for five years before she was laid off with a $6000 severance package and ninety days of COBRA. At the end of the trial, Former Wife found a job that paid $15 per hour with no overtime available, and there was a ninety-day probationary period before insurance and 401k opportunities would arise. The court computed Former Wife’s income at $80,000 per year. The court found that Former Wife did everything in her abilities to find a job. Former Wife sent out resumes, received very few phone calls expressing interest, and interviewed for positions for which she was not hired.
In its final judgment of dissolution of marriage, Former Husband was ordered to pay Former Wife “permanent periodic alimony in the amount of $2500 per month which he has the present ability to pay.” Former Husband owed $42,500 in arrears, to be paid in installments of $500 per month. Former Husband’s child support obligations were up-to-date and he was ordered to pay insurance for the minor child. This appeal followed.

Imputation of Income

An appellate court reviews the imputation of income for competent, substantial evidence. Schram v. Schram, 932 So.2d 245, 249 (Fla. 4th DCA 2005). Testimony showed that Former Wife worked as a receptionist for several years, making less than $30,000. When the Vitros moved to Coral Springs, Former Wife was hired as an administrative assistant, making $30,000. From 2005 until the time in 2009 that Former Wife was laid off, she received promotions and raises, eventually reaching $60,000 as her maximum salary. Former Husband argues that Former Wife’s income should have been imputed at $45,000 by the trial court, rather than $30,000, because Former Wife was voluntarily underemployed.
“A court may impute income where a party is willfully earning less and the party has the capability to earn more by the use of his best efforts.” Schram, 932 So.2d at 249. In determining how to impute income, the trial court must consider two things. See Zarycki-Weig v. Weig, 25 So.3d 573, 575 (Fla. 4th DCA 2009). First, the trial court must determine whether employment was terminated voluntarily. Id. Next, the trial court must determine if unemployment is a result of the spouse’s failure to diligently find employment that is equivalent in income to the former position. Id. “The trial court may only impute a level of income supported by the evidence of employment potential and probable earnings based on work history, qualifications, and prevailing wages in the community.” Id. Voluntary underemployment occurs when a spouse does not put forth a good faith effort to find a position that is comparable to previ *385 ous employment which was terminated. Vazquez v. Vazquez, 922 So.2d 368, 371 (Fla. 4th DCA 2006).
Here, Former Husband contends that the trial court failed to consider Former Wife’s actual income and job responsibilities during her time as an administrative assistant. As such, Former Husband argues that Former Wife should have been considering managerial roles, making anywhere from $38,500.80 per year to $46,092.80 per year. The trial court, in reliance on the record evidence, determined that Former Wife’s imputed income was $30,000. Because the trial court is in the best position to weigh the evidence and it is outside of our purview to disrupt its findings without holding that there was not competent, substantial evidence in support thereof, we affirm the trial court’s imputation of Former Wife’s income at $30,000.

Retroactive Alimony

“[A]n appellate court will not disturb the trial court’s” award of retroactive alimony unless there is an abuse of discretion. Cleary v. Cleary, 872 So.2d 299, 303 (Fla. 2d DCA 2004). Former Husband argues that the retroactive alimony calculation is erroneous because it was calculated from late 2008 when the petition was not filed until February 27, 2009. Further, Former Husband argues that Former Wife received money before and after she vacated the residence and that Former Husband also maintained certain joint expenses during the period of the trial. Former Wife argues that the trial court properly assessed the retroactive alimony because Former Husband had the present ability to pay, while Former Wife was unemployed and had to borrow money from her sister. However, Former Wife does concede that this issue should be remanded solely for the recalculation of the arrearages.
The final judgment of dissolution of marriage stated that the Vitros separated in late 2008 and the petition for marriage was filed on February 27, 2009. Former Husband hypothesizes that the $42,500 retroactive amount must have included the time from late 2008 because the court ordered $2500 per month in permanent periodic alimony. Because the court failed to explain where it reached the $42,500 retroactive amount, the only logical conclusion is that it multiplied the monthly alimony times the number of months Former Husband was in arrears. Dividing the total retroactive amount by the court-ordered monthly amount, it would appear that Former Husband owed alimony arrearages for a total of seventeen months. Working backward from the date of the final judgment, seventeen months earlier is November 2008.
“[A]n award of retroactive alimony must be based on the receiving spouse’s need for alimony and the paying spouse’s ability to pay.” Valentine v. Van Sickle, 42 So.3d 267, 274 (Fla. 2d DCA 2010). In Alpert v. Alpert, 886 So.2d 999 (Fla. 2d DCA 2004), the appellate court reversed as to the award of retroactive alimony because the record did not support the findings that the Husband had the ability to pay the amount awarded. Id. at 1002. “The absence of such findings precludes meaningful appellate review.” Id. Here, the record does not support the trial court’s findings that retroactive alimony should relate back to late 2008 where the petition for dissolution of marriage was not even filed until February 27, 2009.
As such, we reverse the retroactive alimony in the amount of $42,500 and remand for a reassessment of the amount owed by Former Husband to Former Wife, specifically considering the date to which alimony should relate back.

*386
Equitable Distribution

An appellate court reviews a trial court’s determination of equitable distribution for an abuse of discretion. Bell v. Bell, 68 So.3d 321, 328 (Fla. 4th DCA 2011). Former Husband argues that the trial court incorrectly stated in its final judgment that he agreed to pay the parties’ credit card debt. Former Husband also argues that the trial court incorrectly stated that he did not seek equalization of the equitable distribution. Former Wife contends that Former Husband asked for unequal distribution, had that request granted, and is now appealing the distribution that he requested.
The record here demonstrates that Former Husband requested to keep the family home, the furnishings therein, and the several hundred thousand dollars debt associated with the house. Former Husband agreed that Former Wife would not pay him an amount she owed him toward the home’s debt and that, instead, that amount could be credited toward unequal distribution and alimony credit. Former Husband maintained the parties’ credit, the house, and the expenses for the children up until the date of trial to maintain the lifestyle the parties had during the marriage. However, there is no support in the record for Former Wife’s contention that Former Husband agreed to continue paying the parties’ marital credit card.
Where there is no stipulation between parties, “[t]he distribution of all marital assets and marital liabilities, whether equal or unequal, shall include specific written findings of fact as to” the ownership interests of nonmarital property, value of marital property and to which spouse it is designated, designation of identified marital liabilities, and all other relevant findings. § 61.075(3)(a-d), Fla. Stat. (2011). Failure by the trial court to include the statutory requirements must result in reversal. Witt v. Witt, 74 So.3d 1127, 1128 (Fla. 2d DCA 2011). Here, the trial court final judgment states that the parties made several agreements, including Former Husband’s payment of the marital credit card debt. The record does not reflect that finding and, instead, reflects a request by Former Husband for Former Wife to either fully or partially accept responsibility for the $25,000 credit card debt. Therefore, the credit card payment was not stipulated to and the trial court had to have made specific written findings of fact as to the credit card debt which comport with section 61.075 in the final judgment. See Witt, 74 So.3d at 1128. Thus, we hold that the trial court erred in allocating the credit card debt in its entirety to Former Husband and remand for the trial court to make specific findings.

Other Expenses

Former Husband also seeks clarification from the trial court regarding other expenses. Former Husband argues that the trial court failed to address who is responsible for making the remaining payments to the prepaid college fund for the Vitros’ daughters, and further contends that the final judgment was silent as to the parties’ automobile leases and the expenses associated therewith. The final judgment states that “[t]he Florida Pre Paid College Fund is to be utilized for the child’s college. If the child does not elect to go to college, the parties will equally divide the proceeds.” Former Husband argues that, while the final judgment orders an equal division of unused proceeds, it does not include provisions for remaining payments that must be made to the college fund.
As discussed above, pursuant to section 61.075, Florida Statutes, absent an agreement between the parties, the trial court must identify marital liabilities and *387 make specific findings in regard to those liabilities. § 61.075(3)(c). Here, there was no agreement made as to the college fund, thus the trial court must have complied with the requirements set forth in section 61.075. Failure to do so requires reversal. Therefore, we remand the issue of the Florida Prepaid College Fund outstanding payments to the trial court for determination of who is responsible for the remaining payments to the fund.
As to the family’s vehicles, the final judgment simply stated “[t]he parties are to keep the cars that they are driving until the leases expire.” The parties did stipulate at trial that until the parties decided whether they were going to switch cars with one another, each side was going to pay their own car payment. The final judgment does not include determinations as to who is responsible for the insurance on the vehicles, nor the other expenses associated with their leases. If the parties did not stipulate as to a particular marital asset or liability, the trial court must set forth specific written findings. The vehicle insurance and other expenses associated with the parties’ leases are not mentioned in the final judgment and, as such, no specific findings of fact regarding these items were made. We also remand the issue of car insurance and lease expenses, other than monthly car payments, to the trial court for further findings and clarification as to the responsibilities of the parties.

Amount of Alimony

‘“The trial court’s award of alimony is subject to an abuse of discretion standard of review, and where the record does not contain substantial, competent evidence to support the trial court’s findings regarding the amount of alimony awarded, the appellate court will reverse the award.’ ” Wabeke v. Wabeke, 31 So.3d 793, 795 (Fla. 2d DCA 2009). Former Husband argues that the trial court did not consider Former Wife’s actual needs, lifestyle of the parties .based upon debt, income of the parties, and the unequal distribution of marital debt in making its alimony- determination. Former-Husband also argues that the trial court made improper calculations using the child support guidelines worksheet because the court did not consider that Former Wife could claim the children as two dependents. Adding the deductions she would receive for the two dependents, Former Wife’s income is higher than the court computed. With these deductions, Former Wife makes $31,393.20 taxable income per year, plus $30,000 alimony, plus receives $997 per month for social security, equaling an annual income of approximately $73,357.20. Additionally, Former Husband pays monthly child support, COBRA payments, monthly Medicare payments, and monthly co-pays to doctors; none of which the trial court awarded credit for or considered otherwise.
While alimony can be considered as part of the former spouse’s income, a child support obligation is not considered income. Price v. Price, 951 So.2d 55, 58 (Fla. 5th DCA 2007). As such, the $947.87 for monthly child support cannot be considered as part of Former Wife’s annual income. This court held that, excluding child support payments, “a court may consider all sources of income available to either party in computing alimony. In-comé includes ‘annuity and retirement benefits, pensions, dividends, interest, royalties, trusts, and any other payments made by any person [or] private entity.’ ” Rosecan v. Springer, 985 So.2d 607, 609 (Fla. 4th DCA 2008) (emphasis added). Thus, it is within the trial court’s discretion to calculate income as it deems equitable. See Canakaris v. Canakaris, 382 So.2d 1197, 1202 (Fla.1980).
*388 Discretion, in this sense, is abused when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.

Id.

Former Husband also argues that the trial court failed to consider “that the parties’ finances were at a critical breaking point and they had exhausted all forms of credit available to them” when it analyzed the parties’ lifestyle during the marriage. Former Wife contends that the parties lived an opulent lifestyle and that the alimony was properly calculated in light of that lifestyle. The record shows that the parties received an equity line on their marital home[1] of $225,000 which was exhausted on private school tuition, a computer, books and uniforms for the children, furniture, a motorcycle, credit card and other debt. The parties’ bank accounts were all low and could not be drawn from to fulfill financial obligations, and it was necessary for family members to help cover costs during the litigation.
This court, in Jaffy v. Jaffy, 965 So.2d 825 (Fla. 4th DCA 2007), held that “the standard of living during the marriage is of little practical value in deciding the alimony question” where “the parties could not continue their marital lifestyle on [the] current income.” Id. at 827; see also Donoff v. Donoff 940 So.2d 1221, 1225 (Fla. 4th DCA 2006) (“The standard-of-living is not a super-factor in setting the amount of alimony-trumping all others. It has only a case specific and quite limited purpose.”). Here, the trial court considered the debt that the parties incurred and the financial status of their home, yet when it calculated alimony, the court still determined that $2500 per month permanent periodic alimony was sufficient. The record does not demonstrate that the trial court placed too much weight on the standard of living that the parties enjoyed during their marriage, and instead, demonstrated that it took into consideration all relevant factors, including the current state of the parties’ finances.
For the foregoing reasons, we remand this case so the trial court can exercise its discretion and determine whether it should attempt to resolve these issues based on the existing record or choose to take additional evidence in making these resolutions. Any changes the trial court makes to the equitable distribution would affect the alimony amount; thus, if any changes are made, we direct the trial court to revisit the alimony issue in accordance with those changes.

Reversed and Remanded.

HAZOURI and LEVINE, JJ., concur.

. The home was worth $1,000,000 and the mortgage was $500,000 at the time the parties took out the equity line.