910 So.2d 336 (2005)
Stephany M. BYERS, Appellant,
v.
John P. BYERS, Appellee.
Nos. 4D03-4402, 4D04-1026.
District Court of Appeal of Florida, Fourth District.
September 14, 2005.
*339 John T. Mulhall III of Rutherford Mulhall, P.A., Boca Raton, for appellant.
Bennett S. Cohn of Law Offices of Bennett S. Cohn, West Palm Beach, for appellee.
SHAHOOD, J.
Former wife appeals from a temporary relief order and a final judgment of dissolution of marriage in this consolidated appeal. We reverse as to all issues raised and remand for further proceedings.
The parties married on August 25, 1990 and have two children born December 2, 1997 and December 8, 1993. Former wife filed a petition for dissolution in September 2001, and at the time of the final hearing, the parties had been married over thirteen years, former husband was 46, former wife was 37 and the two boys were ages 6 and 10, respectively. An amended petition was filed August 19, 2003.
In seeking temporary relief, former wife stated that former husband, an American Airlines pilot, continued to pay for the expenses of the marital home and support for former wife and their children until the marital home was sold. When the marital home was sold, former wife and the children moved to an apartment and former husband moved into a separate apartment. Each party took the same amount of monies from the sale, $50,000, and placed the remainder in escrow. Former wife, a stay-at-home mother, alleged that she should not have to consume those assets in order to support herself and the children pending the resolution of this dissolution.
In an amended petition for dissolution, former wife sought sole permanent custody of the parties' minor children due to former husband's history of alcohol abuse, temporary and permanent child support, temporary, permanent, periodic and lump sum alimony, life and medical insurance for the benefit of former wife and the children, and attorney's fees.

TEMPORARY RELIEF HEARING
A temporary relief hearing was held October 15, 2003 and a final hearing held February 18 and 19, 2004. At the temporary relief hearing, the parties' financial affidavits were admitted into evidence. Former husband's financial affidavit dated October 13, 2003, indicated that former husband was an American Airlines pilot with a rate of pay of $16,600.00 per month, with an annual income of $147,625.00 and a monthly gross income of $12,320.00. He claimed he had a present net monthly income of $9,973.00 and monthly expenses of $10,091.00, leaving him with a monthly deficit of $118.00. Former wife's amended *340 financial affidavit dated October 10, 2003, showed no income, with monthly expenses totaling $6,790.00. Further, wife claimed the former husband's gross income for 2002 was the result of an eight-month furlough and rehab for alcohol abuse, but that his income in 2000 and 2001 was $207,730.00 and $219,709.00, respectively.
At the temporary relief hearing, former wife testified that she had not worked since the birth of the couple's first child. The parties separated in 2001 and the marital home was sold in July 2003 for $1.1 million. The net proceeds from the sale were approximately $512,000.00, of which the parties each received $50,000.00 and the remainder was placed in escrow. At the time of the hearing, former wife was renting a townhouse.
At the time of the hearing, former wife used $25,000 of the $50,000 she received from the sale of the house on living expenses for herself and her children. Prior to the sale of the marital home, former husband paid all of the monthly expenses while former wife and the children resided in the marital home, but since the sale of the marital home he stopped paying. Further, prior to the sale of the marital home, former wife's monthly expenses were $10,700, but since the sale of the home former wife's monthly expenses were reduced to $6,500.00.
Former wife also testified that former husband had been relieved of his flying duties for nine months during 2002 for an alcohol-related offense and went into rehab; former husband does not dispute this fact.
Former husband testified that he has been employed by American Airlines as a pilot for twenty years. He was currently a Captain of a Boeing Triple Seven (777), with routes usually to South America or London. Due to concessions between the pilots and American Airlines, the pilots' rate of pay had been reduced by about $50,000.00. However, former husband confirmed that the information contained in his financial affidavit was correct.
Former husband confirmed that he had been paying the mortgage and former wife's other expenses prior to the sale of the home and that he gave her a check for $3,800 a month for two years.
In its order on temporary relief, the court ordered that former husband pay former wife $2,500 per month in child support, commencing October 20, 2003, that the escrowed money be released and divided equally between the parties, and denied all other requested relief.

FINAL HEARING
Pursuant to agreement, the parties stipulated to shared parental and residential responsibility for the children, as well as timesharing, with the former wife designated as the primary residential parent. Because the parties divided the proceeds from the sale of the marital home and the contents of the home to their mutual satisfaction, the issues for trial involved the remaining marital assets and liabilities.
At the hearing, former wife testified that since the sale of the marital home she had been renting a townhouse for $1,840 per month (former wife paid a year's rent ($24,000) in advance so that the monthly rent would be lower). Former wife stated that since August 2003, she had been paying her monthly expenses out of the proceeds from the sale of the house. From the $256,000 she received from the sale of the marital home, former wife had $110,000 left.
In her amended financial affidavit, former wife set forth her monthly expenses for herself and the children as $6,790, of which she had no earned income. Former wife last worked outside the home in 1993, just before the birth of the couple's first *341 child. Since then, she had been a stay-at-home mom. Former wife was a high school graduate, with two years at college, and last worked as a flight attendant. She left her job because both she and former husband had been commuting (they lived in Louisiana and both were based out of Dallas) and they could no longer do that after the birth of their first child. Since former husband made more money, the decision was made that she would stay home. The parties stipulated that former wife had the ability to earn $20,000 per year based upon the conclusions reached by a vocational expert hired by former husband. Her maximum earnings as a flight attendant were $19,237.
Former wife stated that at former husband's urging, their divorce had been put on hold due to his alcohol issues and rehabilitation. Former husband was relieved of his duties and could not resume flying until August 2002. The parties agreed to hold off on the divorce until the house was sold.
Former wife stated that she and the children have health coverage through former husband's employer but that there would be costs associated to her after the divorce. Thus far in the proceedings, former wife has had to pay her own attorney's fees.
As to a Wachovia line of credit, former wife stated that she had no knowledge of such a line of credit and there was no loan against the marital home when it was sold. She stated that she has never seen a note for the Wachovia loan and former husband did not produce any documents as to that debt.
Former husband testified that he is a Captain of an American Airlines Boeing 777 and flies to South America and Western Europe. Former husband was on reserve, and each month was on call to be available to fly with a guarantee of a certain number of days off. At the time of the hearing, he was guaranteed 73 hours (with 83 hours being the maximum). Former husband stated that he rarely exceeded the monthly minimum of flying time because trips were awarded according to seniority, so there was not a lot of open extra flying time on this particular airplane. Former husband has 12 years seniority operating a 777-200, and as of May 1, 2003, the hourly captain's rate was $176 an hour. At the time of the hearing it increased slightly to $180 and for May 1, 2004, the maximum pay rate was to be $192.98 an hour. During the five years immediately preceding the final hearing (1999 through 2003), former husband earned $220,760, $207,730, $219,709, $147,625 and $177,000, respectively.
Former husband testified that he had a Supersaver Retirement Account in effect at the time of the filing of the dissolution action. However, no contributions had been made to that account in five or six years. Former husband also had a life insurance policy through his employer for about $140,000 and had an accidental death policy purchased through the pilots' union.
As to the Wachovia loan, former husband confirmed that it was not in existence at the time of the filing of the petition. Former husband claimed the monies were used to pay the mortgage on the marital home and were paid to former wife for child support.
Former husband explained that he was having a "cash flow" problem maintaining the two households and took out the loan in order to remain timely in his payments. The amount of the loan was $50,000 and approximately $45,666 remained outstanding. Former husband explained that he took out the loan because former wife would not join in refinancing the marital home. Thus, former husband believed *342 that part of that debt should be attributable to former wife. Former husband acknowledged that some of the monies went to pay his personal expenses. Although requested, former husband failed to produce any statements that would verify how the monies were used.
Former husband stated that he stopped giving former wife money after the marital home was sold until the temporary relief order. As part of the final judgment, the court denied former wife's request for permanent periodic alimony. The court concluded that former wife made a conscious decision not to work and that she was capable of becoming self-sustaining. "The Wife has chosen not to work during the 2 1/2 years this action was pending and has not put forth any plan of rehabilitation apparently believing that would force this Court to give her an award of permanent alimony. This game of judicial `chicken' will not be rewarded." In denying former wife's claim for permanent alimony, the court held that "[s]he will leave this marriage with substantial assets (in excess of $525,000) and will suffer no diminution in her lifestyle except by her own choices." As such, the court ordered "bridge the gap" temporary alimony in the form of lump sum alimony. "[T]he only `gap' to be bridged was created by the Wife's refusal to move on with her life after the filing of the dissolution action." "Frankly, the Court would not award any alimony but for the generous concession by the Husband." The lump sum alimony was in the amount of $48,000 payable at the rate of $2,000 over 24 months.
In addition, the court ordered child support in the amount of $1,939 per month commencing March 1, 2004. The court held that certain marital liabilities, including a Wachovia loan, were attributable to former husband, and that former husband's payment of former wife's one-half of these obligations would be considered additional lump sum alimony. All claims for retroactive support were denied.

TEMPORARY ALIMONY
In determining whether and to what extent an award of temporary alimony is proper, the trial court must be governed by the wife's needs as established by the parties' standard of living during the marriage and the husband's ability to pay. See Wenzel v. Wenzel, 512 So.2d 275, 275 (Fla. 4th DCA 1987). Moreover, former wife should not have to liquidate her assets to pay for her support. See Wolfson v. Wolfson, 455 So.2d 577 (Fla. 4th DCA 1984)(wife should not be compelled to consume or deplete her liquid assets to maintain the style of living she and husband had enjoyed); see also Batson v. Batson, 821 So.2d 1141, 1142 n. 3 (Fla. 5th DCA 2002)(numerous cases hold that spouses should not be required to deplete their capital assets in order to maintain their standard of living); Hough v. Hough, 739 So.2d 654 (Fla. 4th DCA 1999) (wife would have to invade her assets in order to pay attorney's fee while husband could pay them from his income).
In this case, the record demonstrates that for two years prior to the sale of the marital home, former husband paid for former wife's expenses and support for the children while they resided in the marital home. These expenses were paid while former husband maintained a separate residence. After the sale of the marital home, former husband ceased any support. Former wife testified that prior to the sale of the marital residence, her monthly expenses had been $10,700, but after the sale her monthly expenses decreased to $6,500 per month. Former husband confirmed that he paid the mortgage and former wife's other expenses ($3,800 a month) for two years while she resided in the marital home.
*343 The evidence further demonstrates that since former husband stopped paying any form of support, former wife had to deplete $25,000 of the $50,000 she received from the sale of the home on living expenses for herself and the children. The trial court also ordered that the parties divide equally the remainder of the monies held in escrow from the sale of the marital home. Former wife has had to invade those assets as well.
Clearly, former wife had a need and husband had an ability to pay former wife temporary alimony in order to maintain the standard of living she maintained during the marriage. Former wife had no income of her own and was forced to invade her capital assets for support. Based on the foregoing, we hold that the trial court abused its discretion in denying former wife any temporary alimony. This matter is remanded for further proceedings with directions that the trial court's temporary alimony award be retroactive to the date of former wife's motion for temporary relief. This retroactivity should also apply to the order of child support because the temporary relief order directed that the $2,500 per month in child support be prospective only.

PERMANENT ALIMONY
The trial court denied former wife permanent periodic alimony because she made a conscious decision not to work and the court would not reward a "game of judicial chicken." Instead, due to the "generous concession" by former husband, former wife was given "bridge-the-gap" alimony in the form of lump sum alimony in the amount of $48,000 payable out at $2,000 per month for two years. In addition, former husband would pay former wife's share of certain marital liabilities, including a Wachovia loan, as additional lump sum alimony. This was error.
Whether an award of alimony is permanent or rehabilitative is a matter left largely to the discretion of the trial court, and the appellate court must affirm the trial court's decision if there is a reasonable basis in the record to support the determination. See Canakaris v. Canakaris, 382 So.2d 1197, 1204 (Fla.1980).
Permanent periodic alimony is used to provide the needs and the necessities of life to a former spouse as they have been established during the marriage of the parties. See Zeigler v. Zeigler, 635 So.2d 50, 53 (Fla. 1st DCA 1994). In determining whether to award permanent periodic alimony, the court must consider the needs of the spouse requesting the alimony and the ability of the other spouse to make alimony payments. See id. at 54. The criteria used in making this determination include earning ability, age, health, duration of the marriage, and the value of the parties' estate. See id.
In this case, the parties' thirteen-year marriage was neither a short-term marriage nor a long-term marriage, but rather falls within the "grey area," where a determination of entitlement to permanent alimony will be decided upon a review of the other pertinent factors without the benefit of a presumption in favor or against permanent alimony. See id.
A party is not self-supporting because he or she has the opportunity to enter the job market without some evidence of the ability to earn a salary which would allow the party to live in accordance with the lifestyle established during the marriage. See id. An award of rehabilitative alimony or temporary support should not result in a significant reduction in the standard of living of one spouse below the standard the parties enjoyed during the marriage. See id. The disparate earning power of the parties is, therefore, a significant *344 factor in determining whether permanent or temporary support is appropriate. See id.; see also Nelson v. Nelson, 721 So.2d 388, 389 (Fla. 4th DCA 1998). In situations where the superior earning power of one spouse is achieved during a period when the other spouse is out of the job market as a result of an agreement that the nonworking spouse will care for the children, the courts of this state have reversed awards of temporary support in lieu of permanent alimony. See id.
In this case, in addition to former wife's need and ability to pay, the parties' disparate earning potentials are vast. For the majority of the parties' marriage, former wife stayed home to raise the children. Former wife stipulated to an imputation of income based on her earning potential as $20,000.00. Even if former wife were to become gainfully employed, her needs would not be met. The trial court's award of a "bridge-the-gap" award by way of lump sum alimony because it did not reward a game of "judicial chicken" demonstrates that it did not take into consideration the various factors necessary to arrive at a determination for or against permanent alimony. Based on the evidence adduced at trial, former wife was clearly entitled to a permanent alimony award.

TEMPORARY ATTORNEY'S FEES
The trial court also abused its discretion in failing to award former wife temporary attorney's fees. Based on the parties' disparate earning potential and the fact that former wife had to invade her capital assets in order to sustain her daily living requirements, former husband clearly had the ability to pay and former wife had a need for temporary relief. See Rosen v. Rosen, 696 So.2d 697 (Fla.1997).

WACHOVIA BANK LOAN
Here, the trial court determined that the Wachovia Bank loan was a marital debt and determined that former wife's relief from that liability be considered additional lump sum alimony.
It is undisputed that the loan was taken out during the dissolution proceedings. This debt was never disclosed in former husband's financial affidavits and was first discovered during his deposition. Further, despite being requested by former wife, former husband failed to produce any statements verifying what the proceeds were used for.
Since the parties did not have a valid separation agreement setting a cut-off date for determining marital assets and liabilities, the trial court abused its discretion in including this debt as a marital liability. Section 61.075(6), Florida Statutes (2001), provides that the cut-off date for determining assets and liabilities to be identified or classified as marital assets and liabilities is the earliest of the date the parties enter into a valid separation agreement, such other date as may be expressly established by such agreement, or the date of the filing of a petition for dissolution of marriage. The date for determining the value of assets and the amount of liabilities identified or classified as marital is the date or dates that the judge determines is just and equitable under the circumstances. Different assets may be valued as of different dates as, in the judge's discretion, the circumstances require. See id.; see also Rao-Nagineni v. Rao, 895 So.2d 1160, 1161 (Fla. 4th DCA 2005)(section 61.075(6), Florida Statutes (2003), provides a bright line rule for setting the date to be used in determining the marital classification of assets and liabilities. If there is no valid separation agreement, the cut-off date is "the date of the filing of the petition for dissolution of marriage."). The discretion given to trial courts arises after the assets and liabilities are characterized *345 as marital or non-marital. See id. As the debt in question admittedly came into existence after the parties separated, the trial court abused its discretion in allocating this debt as a marital debt and in allocating former wife's portion as additional lump sum alimony.

401(K) SUPERSAVER RETIREMENT ACCOUNT
In the final judgment, the trial court valued former husband's 401(k) Supersaver Retirement Account as of September 4, 2001, the date of the filing of the petition for dissolution. No contributions or withdrawals had been made to the account for the past several years, yet the asset passively appreciated during the proceedings as a result of market forces. The court valued the asset as of the date of the petition at $107,662; however, former husband's second amended financial affidavit valued the asset as of February 18, 2004 at $178,631.
While the trial court has the discretion to determine the value of marital assets as of "the date or dates as the judge determines is just and equitable under the circumstances," the trial court, in this instance, deprived former wife of substantial passive appreciation of the marital asset during the two-year period from the time of the filing of the petition to the final hearing by setting the value as of the date of the filing of the petition. See § 61.075(6), Fla. Stat. (2001).
In Perlmutter v. Perlmutter, 523 So.2d 594, 594 (Fla. 4th DCA 1987), review denied, 531 So.2d 1354 (Fla.1988), this court held that the date of valuation of marital assets in dissolution proceedings is to be determined by the trial court on a case-by-case basis, depending on the facts and circumstances thereof. In that case, the court determined that the date of the trial dissolution proceeding, rather than the date of filing of the action, was the appropriate date for valuation of the marital assets for equitable distribution purposes where the property had increased in value by over $2,000,000 between filing and the trial date. In so holding, the Perlmutter court aligned itself with the holding in Wegman v. Wegman, 123 A.D.2d 220, 509 N.Y.S.2d 342, 352 (1986), which stated:
In many cases valuation of marital assets as of a date as close to the time of trial as practicable will result in an award which is fair to both parties. As has heretofore been pointed out, there frequently may be a substantial lapse of time between the date of commencement of the action and the date of trial.... Under such circumstances, the valuation of assets close to the time of trial may result in the formulation of an award consistent with the purpose of equitable distribution and insure that each spouse receives a fair share of the family assets accumulated while the marital relationship endured.
However, in other cases circumstances may exist which would justify the use of a valuation date closer to the time of commencement of the action. As we have already mentioned, a sharp increase in the value of a marital asset due solely to the efforts of the owner spouse might be such a circumstance. Similarly, a dramatic reduction in value due to dissipation or wasteful conduct of the owner spouse might justify the use of a date earlier than the date of trial. These examples, of course, are not exclusive. Furthermore, recognition may be given to the principle which is the basis of the Equitable Distribution Law, namely, that the concept of "economic partnership" rests upon the existence of an underlying and continuing marital relationship.
In the last analysis, the date chosen must be tailored to the particular facts *346 involved in each case and must be reflective of the legislative mandate to provide for the equitable distribution of the assets of the marital partnership.
Perlmutter, 523 So.2d at 595-96 (citations omitted); compare Catalfumo v. Catalfumo, 704 So.2d 1095, 1098-99 (Fla. 4th DCA 1997), review denied, 717 So.2d 529 (Fla.1998)(trial court properly selected date of petition for dissolution, rather than date of trial, as valuation date for equitable distribution, where the increase in the value of husband's businesses resulted from his individual efforts after the parties separated and after the filing of petition).
In this case, the asset passively appreciated almost $70,000 between the filing date and the date of the hearing. Shortly after the proceedings began, the parties agreed to put things on hold while former husband went into rehab and was on disability. Further, the parties agreed to delay the proceedings until after the marital home was sold.
Based on the factual circumstances in this case and because the trial court gave no explanation as to why it settled on the date of filing as the valuation date, we hold that the trial court abused its discretion. Accordingly, this matter must be remanded for further proceedings consistent with this opinion.

CHILD SUPPORT
The child support award must be remanded for a recalculation to take into consideration former husband's scheduled salary increase which was to take effect May 1, 2004, just shortly after trial.

LIFE INSURANCE
The trial court abused its discretion in failing to order former husband to maintain life insurance to secure his alimony and child support obligations. Given former husband's occupation as an airline pilot who flies regularly on international trips to Europe and South America and the increased threats associated with flying since the September 11, 2001 attacks, former wife demonstrated a need for protection. See § 61.08(3), Fla. Stat. (2003)(allows a trial court to order a party to maintain a life insurance policy in order to secure payment of an alimony award); Sobelman v. Sobelman, 541 So.2d 1153, 1154 (Fla.1989) (allowing trial court to order a spouse to maintain a life insurance policy for the protection of the other spouse's support, even in the absence of any arrearage).
In order to impose such a requirement, the trial court must make a finding that there is "a demonstrated need to protect the alimony recipient." Moorehead v. Moorehead, 745 So.2d 549, 552 (Fla. 4th DCA 1999). The court must also make a finding as to the amount of insurance needed, the cost of such insurance, and the insurability of the party being ordered to obtain it. See Forgione v. Forgione, 845 So.2d 968, 969-70 (Fla. 4th DCA 2003)(stating that when ordering a spouse to maintain a life insurance policy, the court must consider the cost and financial impact on the paying spouse); see also Guerin v. DiRoma, 819 So.2d 968, 969-70 (Fla. 4th DCA 2002)(reversing order where trial court failed to make the requisite findings to justify ordering husband to secure life insurance, where there was insufficient evidence presented regarding husband's insurability or what the cost of insurance would be); Israel v. Israel, 824 So.2d 953, 953-54 (Fla. 4th DCA 2002)(requiring reversal and remand where trial court failed to make findings of the need to secure child support and alimony payments, the amount of insurance needed to secure those payments, and the cost of such insurance).
*347 In keeping with the above-stated law, this matter must be remanded for further proceedings.
Reversed and Remanded with directions.
KLEIN and TAYLOR, JJ., concur.