*472
 
 WARNER, J.
 

 The wife appeals a final judgment of dissolution of marriage in which the trial court awarded her bridge-the-gap alimony but no permanent or rehabilitative alimony even though the wife had no income and the husband had a net income in excess of $9,000 per month. The court also permitted the husband to avoid contempt for willfully failing to pay the home mortgage and expenses by quitclaiming to the wife his interest in the marital home which was facing foreclosure because of his failure. It also denied the wife attorney’s fees. Although there is no transcript of the proceedings, the errors in the final judgment are apparent on its face. We reverse on these issues.
 

 In the final judgment the court recited the following facts. The parties were married for eleven years and had two children, ages eleven and thirteen, at the time of the dissolution. The husband, age forty-one, was employed as a vice president of information technology, grossing $14,375 and netting $9,026.61 per month in compensation. The wife, age thirty-nine, worked only sporadically during the marriage, as the parties agreed that she would take care of the children. Her last employment was as a customer service representative, and she was looking for work at Publix which pays $10 per hour. She was not employed at the time of the final hearing, although the court found her capable of working. Both parties had good physical health, but the wife had an anxiety disorder and the husband was an alcoholic.
 

 The court divided the parties’ assets. The house, whose mortgage far exceeded its value, was divided and both parties were equally responsible for the mortgage. The husband’s IRA was also split between the parties. Each party kept his or her vehicle and was responsible for the debt associated with it. The husband received his Honda motorcycle, which was not valued in the division.
 

 The wife had requested permanent, rehabilitative, temporary, and bridge-the-gap alimony. The court awarded $1,200 per month of bridge-the-gap alimony after considering the factors in section 61.08, Florida Statutes. The court made the following findings of fact in awarding $1,200 bridge-the-gap alimony for two years:
 

 a.
 
 The age and physical and emotional condition of each party:
 
 The Husband is 41 years of age and in good health other than his alcoholism. The Wife is 39 years of age and in good health. The Court does not find that the Petitioner/Wife’s emotional condition affects her ability to work.
 

 b.
 
 The financial resources of each party, the non marital and the marital assets, and liabilities distributed to each:
 
 The Court has equally distributed the marital estate.
 
 The parties are leaving this marriage with debt that outweighs assets,
 
 [emphasis supplied]
 

 c.
 
 The time necessary for either party to acquire sufficient education or training to enable the party to fínd appropriate employment.
 
 The Husband is gainfully employed. The Wife has been unemployed for several years however she is capable of working.
 
 The Wife should be able to find gainful employment immediately however at an earning rate substantially less than the debt she will have,
 
 [emphasis supplied]
 

 d.
 
 The contribution of each party to the marriage, including but not limited to, services rendered in homemaking, child care, education and career building of the other paHy:
 
 By mutual agreement the Wife has primarily been a homemaker and has had sporadic employment. She has been the primary caretaker of the minor children. The
 
 *473
 
 Husband has traditionally been the primary breadwinner.
 

 e.
 
 All sources of income available to either party:
 
 The Husband has the ability to sell the Honda motorcycle. The parties each have the ability to liquidate the Husband’s 401 K plan which they will share.
 

 f.
 
 The standard of living established during the marriage:
 
 The parties had a middle class standard of living during most of the marriage, however this has disintegrated into a dissolution mired with debt and possible home foreclosure.
 

 g.
 
 The duration of the marriage:
 
 The parties were married on February 14, 1996 and separated on March 19, 2007. The Court finds this to be a “gray” area term of marriage.
 

 h.
 
 The Court may consider any other factor necessary to do equity and justice between the parties:
 
 The Husband has willingly and without regard for his family’s welfare ceased supporting the household in any manner, in spite of his ability to do so. His refusal to acknowledge and seek proper treatment for his disease of alcoholism greatly impaired this union.
 

 The court determined that the wife would be the primary residential parent for the children and awarded her $1,908 in child support, based upon the husband’s net monthly income and its imputation of $1,720 in monthly income to the wife.
 
 [1]
 

 In the final judgment, the court recited that the husband had already been found in contempt for failing to pay as ordered the children’s medical expenses, the home mortgage, homeowner’s association fees, and maintenance expenses on the house. The court ordered the husband incarcerated for 120 days. However, in lieu of incarceration, the court allowed the husband to quitclaim his half of the home to the wife, finding that this was a better alternative for the wife and children than incarceration. The court also denied either party an award of attorney’s fees. The wife appeals.
 

 Judgments of dissolution of marriage distributing marital property, awarding alimony, and establishing child custody and visitation are reviewed under an abuse of discretion standard.
 
 Canakaris v. Canakaris,
 
 382 So.2d 1197 (Fla.1980), sets forth the well known formulation of that standard:
 

 In reviewing a true discretionary act, the appellate court must fully recognize the superior vantage point of the trial judge and should apply the “reasonableness” test to determine whether the trial judge abused his discretion. If reasonable men could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion. The discretionary ruling of the trial judge should be disturbed only when his decision fails to satisfy this test of reasonableness.
 

 Id.
 
 at 1203. A trial court’s ruling is presumed correct, and where no transcript is provided, the appellate court cannot determine whether the evidence supports the trial court’s rulings or the court misconceived the law.
 
 [2]
 

 See Applegate v. Barnett
 
 
 *474
 

 Bank,
 
 377 So.2d 1150 (Fla.1979). Thus, failure to provide the transcript generally thwarts appellate review. However, an exception applies where errors appear on the face of the judgment.
 
 See Aguirre v. Aguirre,
 
 985 So.2d 1203 (Fla. 4th DCA 2008). Although there is no transcript of the proceedings before the trial court, the trial court made detailed findings of fact. Based upon those findings of fact, we conclude that the trial court abused its discretion in awarding bridge-the-gap alimony to the wife.
 

 As explained in
 
 Yitzhari v. Yitzhari,
 
 906 So.2d 1250, 1255 (Fla. 3d DCA 2005), “[b]ridge-the-gap alimony serves to assist a spouse already capable of self-support during the transition from being married to being single.”
 
 Accord Corchado v. Corchado,
 
 648 So.2d 1261, 1261 (Fla. 4th DCA 1995) (“[S]ome courts have allowed rehabilitative alimony awards to serve as a ‘bridge-the-gap’ measure to aid the recipient spouse in making the transition from a married to a single state.”). Bridge-the-gap alimony does not comport with the facts of this case as found by the trial court. “A party is not self-supporting because he or she has the opportunity to enter the job market without some evidence of the ability to earn a salary which would allow the party to live in accordance with the lifestyle established during the marriage.”
 
 See Byers v. Byers,
 
 910 So.2d 336, 343 (Fla. 4th DCA 2005). The wife in this case is not capable of self-support at this time. The court found that while the wife could work, her earnings would not even cover her debts. Thus, in essence under the facts as found by the trial court, the wife would have no capacity to support her day-to-day living expenses.
 

 The wife claims that the trial court erred in failing to award permanent alimony, based upon the facts that the court found.
 

 Permanent periodic alimony is used to provide the needs and the necessities of life to a former spouse as they have been established by the marriage of the parties. The two primary elements to be considered when determining permanent periodic alimony are the needs of one spouse for the funds and the ability of the other spouse to provide the necessary funds.
 

 Canakaris,
 
 382 So.2d at 1201. With a duration of eleven years, this marriage falls within those “gray area” marriages where there is no presumption for or against an award of alimony.
 
 See Byers,
 
 910 So.2d at 343. In a gray area marriage, “[t]he disparate earning power of the parties is ... a significant factor in determining whether permanent or temporary support is appropriate.”
 
 Id.
 
 at 343-44. In addition, the court must consider the standard of living of the parties.
 
 See Nichols v. Nichols,
 
 907 So.2d 620 (Fla. 4th DCA 2005). Here, the trial court’s evaluation of the statutory factors failed to consider the actual incomes of either of the parties. The wife was not employed, and the husband netted over $9,000 per month. And although the court found that the parties enjoyed a middle class living style, it discounted it because the parties were mired in debt. It failed to consider the wife’s reasonable living expenses, even though it admitted in evidence the wife’s financial affidavit. In it, the wife listed expenses including a $3,750 monthly mortgage payment, and total monthly expenses of $10,220. The household expenses alone
 
 *475
 
 far exceeded what the wife could earn, the child support, and the bridge-the-gap alimony awarded by the court.
 

 The trial court’s findings all point to the need for permanent alimony in some amount. The parties agreed that the wife would be a stay-at-home mother, and she had only sporadic employment. She has only a high school education. Her work history showed that she was employable, and the court predicted that she would find work but her income would not cover her debts. The court imputed to her a minimum level of income. She is the primary residential parent of both children. She has no other assets of value, as the court determined that the marital debt exceeded the value of the marital assets. One of the reasons that the wife is so much in debt is because, as the court found, the husband entirely abandoned the support of his family. The court’s findings show that the wife proved the need for alimony.
 

 The court’s findings also show that the husband has the ability to pay alimony. His obligation for alimony and support amount to only one-third of his
 
 net
 
 income. He is responsible for only his share of the marital debt. He does not have the primary residential custody of his children.
 

 The court’s findings do not support the conclusion that bridge-the-gap alimony is appropriate. The facts show that the court not only should have considered a greater amount of alimony but also that some amount of permanent alimony should have been awarded, as there were no findings that the wife could be rehabilitated to a level of income which would even come close to supporting the wife in accordance with a “middle class” standard of living.
 

 As
 
 Canakans
 
 teaches: “Judges dealing with cases essentially alike should reach the same result. Different results reached from substantially the same facts comport with neither logic nor reasonableness.” 382 So.2d at 1203. Here, the trial court’s ruling is at odds with several cases involving similar facts and principles. In
 
 Byers,
 
 we overturned an award of “bridge-the-gap” alimony and determined that the wife of a thirteen-year marriage producing two children was entitled to permanent alimony where there was a substantial disparity in income, even though the court also awarded the wife an equitable distribution in excess of half a million dollars. 910 So.2d at 342-44. Although the disparity in income was even greater than the disparity here, the wife was also a stay-at-home mother with no present ability to earn income sufficient to maintain any semblance to the style of living during the marriage.
 

 We also reversed the denial of a permanent alimony award under similar facts in
 
 Ghen v. Ghen, 575
 
 So.2d 1342 (Fla. 4th DCA 1991). The marriage of the Ghens lasted eleven-and-a-half years and produced one child. The court found that the wife could earn $20,000 per year, but that amount would be patently insufficient to support her standard of living. No evidence was presented that she could be rehabilitated to earn any greater amount of income. The husband earned ten times as much as the wife. We held that the court erred in failing to grant permanent or rehabilitative alimony sufficient to support her while she obtained education and training to increase her income-producing ability.
 

 Finally, in
 
 Yitzhari v. Yitzhari,
 
 906 So.2d 1250 (Fla. 3d DCA 2005), a wife in a nine-year marriage producing four children was awarded only bridge-the-gap alimony for six months. While the husband had substantial ability to pay and significant assets, the wife had no training and only a minimal ability to earn income. The Third District found that bridge-the-gap alimony was “wholly inappropriate”
 
 *476
 
 and reversed and remanded for the trial court to consider either rehabilitative or permanent alimony.
 
 Id.
 
 at 1255.
 

 Because the trial court abused its discretion in awarding bridge-the-gap alimony, we reverse for the court to reconsider permanent or rehabilitative alimony in an amount sufficient to provide the wife adequate support in accordance with their standard of living and the husband’s ability to pay.
 

 We likewise reverse the order denying the wife attorney’s fees. The court’s final judgment clearly shows that the husband has a superior ability to pay, and the wife has a need of funds to pay her attorney’s fees.
 
 See Margulies v. Margulies,
 
 645 So.2d 54 (Fla. 4th DCA 1994).
 

 Finally, it is somewhat inexplicable that, at a time when the home mortgage was pending foreclosure, the trial court found it appropriate to relieve the husband of his contemptuous conduct in failing to pay the household bills by quit-claiming his interest in the house to the wife. In the final judgment, the court found that the amount of the mortgage far exceeded the home’s value. Therefore, quitclaiming the house to the wife provided no relief or compensation to the wife for the financial predicament in which she was left by her husband’s intentional conduct. We agree with the wife that, under the circumstances as found by the trial court in its final judgment, where the liabilities against the home exceeded its value, the court should have also entered a judgment for the amount of the arrearages.
 
 See Riley v. Riley,
 
 509 So.2d 1366, 1369 (Fla. 5th DCA 1987) (“[A] court conducting such a hearing should have jurisdiction to enter both a judgment for arrearages and/or orders effecting contempt enforcement when appropriate.”). We remand for the trial court to determine the amount owing and enter a judgment on that amount due.
 

 For the foregoing reasons, we reverse the final judgment and remand for further proceedings consistent with this opinion, which may include the taking of additional evidence.
 

 POLEN and TAYLOR, JJ., concur.
 

 [1]
 

 . Although the wife also challenges the court's imputation of $1,720 per month to her, using the $10 per hour that Publix would pay the wife, multiplying it by 40 hours per week, and then by 4.3 weeks per month amounts to $1,720 per month.
 

 [2]
 

 . The wife did prepare a statement of proceedings pursuant to Florida Rule of Appellate Procedure 9.200(b)(4), which the trial court approved. However, the statement contains few additional facts bearing on the financial issues. For the most part, the statement confirms that the husband was an aleo-
 
 *474
 
 holic who did not want to be married to the wife because he wanted a woman with education. The wife represented herself at the proceedings, because the court had allowed her counsel to withdraw. While she had requested a continuance to obtain another lawyer, the court denied it.