DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**PHILLIP RODOLPH, SR.,**
Appellant,

v.

**BETTY A. RODOLPH,**
Appellee.

Nos. 4D18-3167 and 4D20-253

[June 17, 2022]

Appeals from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Lester Langer, Senior Judge, and Nickolaus Hunter Davis, Judge; L.T. Case No. FMCE 08-009536 (40/91).

Hal Vogel of the Vogel Law Firm, Davie, for appellant.

Tracy Belinda Newmark and Natalie Suzanne Kay of Kelley Kronenberg, Fort Lauderdale, for appellee.

*ON MOTION FOR CLARIFICATION AND/OR REHEARING*

DAMOORGIAN, J.

We grant Former Husband's motion for clarification and/or rehearing in part to correct language in footnote one in our opinion dated May 4, 2022, and substitute the following in its place.

This matter involves two appeals with the same parties and underlying facts. We have therefore sua sponte consolidated the appeals for opinion purposes.

In case no. 4D18-3167, Phillip Rodolph, Sr. ("Former Husband") appeals the trial court's final judgment denying his petition to modify or terminate permanent alimony ("Final Judgment"), wherein he was ordered to continue paying permanent alimony in the amount of $1,700 a month to Betty Rodolph ("Former Wife"). In the Final Judgment, the trial court also found Former Wife was entitled to attorney's fees incurred during the

modification proceedings.[1]  On appeal, Former Husband argues the trial court erred in: (1) denying his petition to modify or terminate alimony; (2) granting Former Wife's motion to preclude his expert forensic accountant from testifying at trial; and (3) finding entitlement to attorney's fees.  We affirm on issue two without further comment.  For the reasons explained below, we reverse on issue one and dismiss on issue three.

In case no. 4D20-253, Former Husband appeals two post-judgment orders: (1) "Order on Petitioner/Former Wife's Motion for Temporary Appellate Attorneys Fees and Costs" and (2) "Order on Petitioner/Former Wife's 3rd Motion for Contempt, Enforcement and Other Relief" (collectively "post-judgment orders").  The post-judgment orders required Former Husband to pay Former Wife $19,000 in temporary appellate attorney's fees for the appeal of the Final Judgment, $23,800 in accrued alimony arrearages through November 2019, and $20,497.50 in attorney's fees relating to the post-judgment contempt and enforcement proceedings.  In light of our holding on the modification issue, the post-judgment orders must be reversed.

**Background**

In 2009, Former Husband and Former Wife divorced after thirty-three years of marriage.  At the time, Former Husband was a twenty-four-year veteran with the Broward County Sheriff's Office as a corrections officer.  In the dissolution judgment, Former Wife was awarded permanent alimony in the amount of $1,700 per month, as well as a portion of Former Husband's retirement funds to be distributed when he "actually retired by means of a QDRO."  At the time the dissolution judgment was entered, Former Wife's share of Former Husband's retirement fund was worth $236,500.  When Former Husband retired several years later, the value of Former Wife's share of the retirement funds had increased to $352,283.08.

In 2016, Former Husband filed a petition to modify or terminate alimony ("Modification Petition").  The Modification Petition alleged Former Husband no longer had the ability to pay alimony because he was involuntarily unemployed due to a heart condition, back and neck problems, and carpal tunnel in his arm and wrist.  It also alleged that Former Wife no longer had a need for alimony because she had since received her share of Former Husband's retirement funds, was receiving

---

[1]  In the Final Judgment, Former Husband was also ordered to pay $23,600 in alimony arrearages for the period of January 1, 2017, through June 30, 2018.  That award of alimony arrearages was stipulated by the parties.

monthly income due to her own disability, and her monthly expenses were reduced by virtue of her living with her daughter.

While the Modification Petition was pending, Former Wife filed her first motion for contempt and enforcement, arguing Former Husband had ceased paying her alimony. After a hearing on the motion, the trial court ordered Former Husband to pay $1,000 that day, and $1,000 each month as temporary partial alimony payments to Former Wife.

At trial on the Modification Petition, Former Husband testified he received $1,970 a month in social security benefits but was earning no income. He also testified that he remarried in 2010 and currently lived with his new wife and her minor son and adult daughter. In 2017, the new wife stopped working in order to take care of Former Husband. That same year, Former Husband also purchased a house and incurred various expenses relating to the house. Former Husband's amended financial affidavit, which was admitted into evidence, reflected $7,634 in total monthly expenses and included expenses relating to the new wife and her children. Former Husband testified that in order to meet his monthly expenses, he had to withdraw a minimum of approximately $3,500 per month from his retirement account.

Former Wife, in turn, testified she received $352,283 as her share of Former Husband's retirement assets in December 2015. Former Wife used a portion of the money to purchase a new car and an annuity and to pay certain bills, and put the remainder of the money in an IRA investment account. As of the time of trial, Former Wife's annuity and IRA investment account reflected a balance of $237,905.99. Regarding her monthly income, Former Wife testified she received $515.10 in social security disability benefits and $1,440 from the annuity she purchased, for a monthly total of $1,955.10. Former Wife's amended financial affidavit, which was admitted into evidence, reflected $3,584.62 in total monthly expenses and included monthly donations to "religious organizations" in the amount of $231. The amended financial affidavit also included recurring monthly expenses for rent ($291), home repairs and maintenance ($60), association fees ($102), water, garbage and sewer ($42), home insurance ($161), cable ($75), pest control ($97), and alarm services ($40). At trial, Former Wife conceded that many of the household expenses listed in the amended financial affidavit were incorrect. For example, Former Wife testified the daughter, with whom she resided, paid the monthly cable and alarm bills; the repair and maintenance expense was not recurring; and she paid for the home insurance only once.

Regarding the issue of attorney's fees, Former Wife testified that she incurred $6,227.50 in fees and recently received a bill from her attorney in the amount of $1,860 for a total of $8,087.50. Former Wife also testified that she had a need for attorney's fees. Ultimately, the trial court stated it would "decide the issue on entitlement" only and would reserve on the amount of fees.

The trial court made no findings at the conclusion of the trial. Two months later, the trial court entered the Final Judgment denying Former Husband's Modification Petition. In so doing, the trial court reasoned as follows:

> Based upon the evidence and testimony presented, the Court finds that the Former Wife does not have a greater ability to support herself, as claimed by the Former Husband, as she receives the minimal net monthly amount of $515.10 from Social Security Disability, after the deduction for her health insurance and parent/student loan, the net monthly amount of $1,440.00 from her annuity, inconsistent payments of $75.00 from babysitting her grandchild, and she resides with her daughter, offering rent/household payments to her daughter when financially able. She also tithes to her church equal to about 10% of her income. Even with the receipt of permanent alimony as ordered ($1,700.00 per month) from the Former Husband, the Former Wife's needs are still not being met. Notwithstanding the [F]ormer Husband[']s retirement (which the court has considered as a factor pursuant to *Gelber v. Brydger*, [248 So. 3d 1170 (Fla. 4th DCA 2018)]) based upon the evidence and testimony presented to this Court, the Court finds that Former Husband continues to have the ability to fully provide for himself, and to continue to pay the permanent periodic alimony to the Former Wife as previously ordered. The Former Husband receives $1,970.00 monthly from Social Security retirement benefits, and withdraws a minimum of $3,500.00 gross each month from his retirement funds invested with Primerica. . . . . Further, the Former Husband voluntarily supports his subsequent spouse and her minor child, including her college aged daughter to whom he has no legal obligation. The voluntary financial support he provides to such individuals includes, but is not limited to, family health insurance in the monthly sum of $860.00, housing, food, household supplies, car payment and car insurance.

4

Although the trial court generally concluded Former Wife's "needs were not being met," it made no specific factual findings regarding Former Wife's current expenses or needs and made no reference to the factors in section 61.08, Florida Statutes (2018). Moreover, although the trial court found that Former Husband's retirement was "justified," it made no specific findings as to whether his retirement constituted a substantial and unanticipated change in circumstances.

In the findings portion of the Final Judgment, the trial court also found:

> Former Wife has incurred a total of $23,600.00 in attorneys' fees and costs in these post-judgment modification proceedings. The Former Wife has the need for her attorneys' fees and costs to be paid by the Former Husband. The Former Husband, based upon his relative and overall superior financial circumstances, has the ability to pay these fees and costs.

In the decretal portion of the Final Judgment, however, the trial court stated:

> The Former Wife's request for attorney's fees and costs in this post-judgment modification action is GRANTED as to entitlement. The amount of these reasonable fees and costs is reserved for further hearing upon notice to all parties, if the parties are unable to agree to this amount.

The record does not reflect that the parties stipulated to an amount of fees or that the matter ever proceeded to a fee hearing. Former Husband filed a motion for rehearing, which was denied. The appeal in case no. 4D18-3167 then followed.

Shortly thereafter, Former Wife filed a motion for temporary fees in the trial court, arguing she had to defend Former Husband's appeal in case no. 4D18-3167 and that "the Former Husband has the superior financial ability to pay" and "Former Wife has the need for payment of those fees." Former Wife also filed a third motion for contempt, enforcement, and other relief after Former Husband failed to pay his monthly alimony and alimony arrearages obligations.[2] In the motion, Former Wife also requested Former Husband pay for her attorney's fees and costs relating to "bringing this

_____

[2] The trial court had previously entered a second contempt order establishing unpaid alimony arrearages of $40,600 and ordering Former Husband to pay a purge amount of $23,600 to Former Wife.

motion." The trial court ultimately granted both motions and awarded Former Wife $19,000 in temporary appellate attorney's fees to defend Former Husband's appeal of the Final Judgment, $23,800 in alimony arrearages through November 2019, and $20,497.50 in attorney's fees and costs relating to the second and third contempt proceedings. The appeal in case no. 4D20-253 then followed.

**Analysis**

*Modification Petition*

We begin our analysis by addressing the denial of Former Husband's Modification Petition. "To warrant a modification of alimony, the party seeking the change must prove 1) a substantial change in circumstances; 2) that was not contemplated at the time of final judgment of dissolution; and 3) is sufficient, material, involuntary, and permanent in nature." *Koski v. Koski*, 98 So. 3d 93, 95 (Fla. 4th DCA 2012) (citation and internal quotation marks omitted). "Once a party moving for alimony modification provides substantial, permanent, and unanticipated change in circumstances, 'a trial court must consider and make specific factual findings for each of [the] factors [within section 61.08(2)].'" *Suarez v. Suarez*, 284 So. 3d 1083, 1087 (Fla. 4th DCA 2019) (alteration in original) (quoting *Addie v. Coale*, 179 So. 3d 534, 536 (Fla. 4th DCA 2015)); *see also Donoff v. Donoff*, 940 So. 2d 1221, 1223 (Fla. 4th DCA 2006) (holding that "all applicable section 61.08(2) factors must be considered in modification proceedings under section 61.14"). Notably, section 61.08(2) requires, among other things, that a court consider "[t]he financial resources of each party" and "[a]ll sources of income available to either party, including income available to either party through investments of any asset held by that party." § 61.08(2)(d), (i), Fla. Stat. (2018).

In the present case, the Final Judgment is unclear as to whether the trial court found Former Husband met his burden regarding a substantial change in circumstances. Although the trial court found that Former Husband's retirement was "justified," it made no specific finding as to whether his retirement constituted a substantial change in circumstances. *See Koski*, 98 So. 3d at 95 (unclear from the final order, wherein the trial court found that "former wife has experienced a substantial increase in her earnings," whether "the trial court found that the former husband had met his burden with regard to a substantial change in circumstances"). To the extent the trial court did conclude Former Husband met his burden, the trial court was then required to make specific factual findings regarding the relevant factors in section 61.08(2), Florida Statutes (2018). The findings in the Final Judgment, however, are sparse and conclusory

6

at best, especially regarding Former Wife's needs and sources of income. Aside from referencing Former Wife's monthly income and generally concluding that her "needs were not being met," the trial court made no specific factual findings regarding the expenses listed in Former Wife's amended financial affidavit, many of which were disputed by Former Husband at trial. Furthermore, although the trial court noted Former Wife's investment account reflected a balance of $237,905.99, it failed to consider whether there was income available to Former Wife from that asset without depleting it, such as income from interest. *See Klokow v. Klokow*, 323 So. 3d 817, 824 (Fla. 5th DCA 2021) (finding reversible error in trial court's failure to consider the interest income and dividends from investment accounts when determining need for alimony).

In addition to not making the required findings, the trial court further erred in treating Former Husband's discretionary withdrawals from his retirement account as income for purposes of determining ability to pay. It is well established that discretionary withdrawals from a retirement account cannot be treated as income for purposes of a party's ability to pay alimony. *See, e.g., Kitchens v. Kitchens*, 4 So. 3d 1, 2 (Fla. 4th DCA 2009). In *Kitchens*, we held that the trial court erred by treating the former husband's discretionary IRA withdrawals as income for purposes of calculating alimony, reasoning:

> Our decision is premised upon the differences between a defined-benefit pension plan and an IRA. The typical defined-benefit pension plan provides a fixed monthly payment and prohibits the beneficiary from invading the principal or varying the amount of the monthly payment. By contrast, an IRA's principal is available for immediate withdrawal and the amounts taken may vary. Moreover, treating discretionary IRA withdrawals as income for purposes of calculating alimony forces the owner to deplete the account at a faster rate and deprives the owner of the full use of an asset which, presumably, was subject to equitable distribution at the time of the divorce. *Cf. Byers v. Byers*, 910 So. 2d 336, 342 (Fla. 4th DCA 2005) (holding that a spouse should not be required to liquidate her assets to pay for her support).

*Id.* In comparing discretionary withdrawals to mandatory withdrawals, we held that "mandatory or minimum IRA withdrawals are properly treated as income for purposes of calculating alimony," reasoning that "[t]hese withdrawals resemble payments under a defined-benefit pension plan because they are mandatory and the amounts are calculated by applying a set formula." *Id.* at 3.

7

Here, Former Wife presented no evidence that Former Husband's retirement account was subject to a mandatory or minimum IRA withdrawal. Therefore, the trial court erred in treating Former Husband's discretionary withdrawals as income. At most, the trial court could have imputed income to Former Husband from interest earned on the retirement account. *See Sikora v. Sikora*, 173 So. 3d 1028, 1032 (Fla. 2d DCA 2015) ("Trial courts may impute income from interest earned on retirement accounts if the income is readily available to a spouse without penalty and without the need to reduce the principal."); *see also Regan v. Regan*, 217 So. 3d 91, 94 (Fla. 4th DCA 2017) (reiterating that although a court can consider withdrawals from retirement accounts when considering a spouse's income potential, "such withdrawals would not be appropriate where they required withdrawal from principal"). The trial court, however, failed to make any findings as to whether interest income was available to Former Husband from the retirement account.

The trial court's failure to make specific factual findings regarding Former Wife's current needs and financial resources, coupled with its treatment of Former Husband's discretionary withdrawals from his retirement account as income, makes it impossible for this Court to meaningfully review the Final Judgment and constitutes reversible error. *See Winder v. Winder*, 152 So. 3d 836, 841 (Fla. 1st DCA 2014) (the lack of sufficient factual findings regarding the former wife's financial resources and current living expenses as required by section 61.08 precluded meaningful review of the alimony award); *Matajek v. Skowronska*, 927 So. 2d 981, 987 (Fla. 5th DCA 2006) (the trial court's failure to consider the factors in section 61.08 "frustrates meaningful review of the trial court's award of alimony and constitutes reversible error"); *Beck v. Beck*, 852 So. 2d 934, 937 (Fla. 2d DCA 2003) ("The trial court's failure to make a finding as to the Wife's actual need requires reversal for reconsideration of the alimony award.").

<u>*Attorney's Fees Relating to the Modification Petition*</u>

Former Husband next argues the trial court erred in "awarding" Former Wife $23,600 in attorney's fees and costs in the modification proceeding for various reasons. We dismiss without prejudice Former Husband's challenge to the portion of the Final Judgment regarding Former Wife's entitlement to fees as not yet ripe. Although the trial court found in the findings portion of the Final Judgment that Former Wife had *incurred* $23,600 in attorney's fees, in the decretal portion of the Final Judgment the trial court granted Former Wife's request for fees only "as to entitlement" and "reserved" on the amount. Thus, the trial court did not

8

actually award an amount of attorney's fees in this case. "An order merely finding entitlement to attorney's fees is a non-final, non-appealable order." *Schmidt v. Schmidt*, 319 So. 3d 65, 65 (Fla. 4th DCA 2021); *see also Revier v. Revier*, 45 So. 3d 570, 571 (Fla. 4th DCA 2010) ("We dismiss [the] aspect of the final judgment as it relates to the award of attorney's fees since the trial court determined only entitlement and reserved the determination of amount for a future day.").

Notwithstanding our dismissal, we note that to the extent the trial court did intend to award an amount of attorney's fees, the Final Judgment is deficient in several respects. First, as Former Wife concedes, the $23,600 figure listed in the Final Judgment is not supported by the record evidence. At most, the evidence at the modification trial reflected Former Wife incurred approximately $8,000 in attorney's fees. Second, the trial court failed to make sufficient findings regarding need and ability to pay and appears to have erroneously awarded fees based solely on Former Husband's relative and overall superior financial circumstances. *See Von Baillou v. Von Baillou*, 959 So. 2d 821, 823 (Fla. 4th DCA 2007) ("If one party has no financial need for fees, the other party cannot be compelled to pay them solely because his or her sizeable assets minimize the financial strain of such a payment."); *Zahringer v. Zahringer*, 813 So. 2d 181, 182 (Fla. 4th DCA 2002) ("It is not enough for a party to demonstrate the adverse party's ability to pay; the party seeking payment of fees must also show a need."). Third, the trial court did not make the requisite findings as to the reasonableness of the fees requested, including the reasonableness of Former Wife's attorney's time and hourly rate. *See Powell v. Powell*, 55 So. 3d 708, 709 (Fla. 4th DCA 2011) ("The law is well established that the trial court must set forth specific findings concerning the hourly rate, the number of hours reasonably expended and the appropriateness of reduction or enhancement factors."); *Ard v. Ard*, 765 So. 2d 106, 107 (Fla. 1st DCA 2000) (even when there is substantial competent evidence in the record to support an award of attorney's fees, the fee award will be reversed if the trial court fails to make the required factual findings concerning the hourly rate and the number of hours reasonably expended).

*Post-Judgment Orders*

Turning to the post-judgment orders, because we reverse the Final Judgment, we also reverse the post-judgment orders. *See, e.g., Mederi Caretenders Visiting Servs. of Se. Fla., LLC v. White*, 179 So. 3d 564, 564 (Fla. 4th DCA 2015) ("Because we are reversing the main appeal, we also reverse the order awarding attorney's fees."); *River Bridge Corp. v. Am. Somax Ventures*, 76 So. 3d 986, 989 (Fla. 4th DCA 2011) (where a fee

award was based upon the earlier final judgment which was substantially reversed, under Rule 1.540(b)(5), the attorney's fees judgment should generally also be reversed for further proceedings).  This includes reversal of the post-judgment order awarding alimony arrearages which will necessarily be impacted by our reversal of the Final Judgment.

Also worth noting is that the post-judgment orders awarding Former Wife attorney's fees failed to contain any factual findings as to need and ability to pay.  *See Baime v. Baime*, 850 So. 2d 606, 606 (Fla. 4th DCA 2003) ("The trial court is required to make findings regarding the parties' respective financial needs and abilities to pay.  Failure to do so requires reversal." (internal citation omitted)).

**Conclusion**

With respect to case no. 4D18-3167, we reverse the portion of the Final Judgment denying Former Husband's request to modify or terminate alimony, and dismiss without prejudice Former Husband's challenge to the portion of the Final Judgment concerning attorney's fees.  We remand with instructions that the trial court conduct a new evidentiary hearing on Former Husband's Modification Petition and prepare an order that includes the required factual findings as set forth above.

With respect to case no. 4D20-253, we reverse the post-judgment orders, and, pending the trial court's modification and/or termination of the alimony award, direct the trial court to recalculate any alimony arrearages owed to Former Wife and reconsider entitlement to attorney's fees after making specific findings regarding the parties' need and ability to pay.

*Reversed in part, dismissed in part, and remanded with instructions.*

FORST and ARTAU, JJ., concur.

*        *        *

***Not final until disposition of timely filed motion for rehearing.***

10